United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT BRACKETT, | No. C 05-699 SI (pr) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| J. BROWN, Warden, | |
| Respondent. | |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Brent Brackett's pro se petition for writ of habeas corpus concerning his 2002 conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A. The Crime

The evidence of the crime was described in the California Court of Appeal's unpublished opinion.

> About 8:00 p.m. on January 31, 2002, Angelo Brown was in the garage of his home in San Jose washing clothes. He heard his dog whine and people talking outside. He walked out of the garage into the dark and asked "who is out there?" and "what are you doing?" In response, someone hit or kicked his fence and said, "fuck you." Brown walked to the side gate and saw defendant and Jason Celaya. Mrs. Brown, who was putting their three-year-old daughter to bed, heard a commotion and her husband yelling. She ran outside and saw him confronting the two men. Brown asked the men, "why are you guys here?" The men moved aggressively toward Brown in the driveway while Mrs. Brown, afraid they were going to "rob our house," said, "please leave my house. Leave." Finally, Celaya said to defendant, "Let's go; we are at the wrong house."

> Defendant looked dazed and swung a bottle of tequila at Brown's head. Brown ducked and punched defendant in the jaw. Both men started fighting with Brown, and he pushed Celaya into the dilapidated fence which collapsed when Celaya fell into it. Brown told the men to leave and began backing away. However, the men followed Brown and defendant picked up a large river rock and swung it at Brown. Brown ducked and defendant's arm went over Brown's shoulder and Celaya hit Brown in the eye. Brown's right eye blacked and the bruising spread to the left eye. Defendant said, "I'll kill you right now." "I'm going to kill you and kill your family." "I know where you live."

Cal. Ct. App. Opinion, pp. 1-2.

The two men then jogged away. Mrs. Brown called 911 while Mr. Brown followed the men, seeing the defendant enter into the house of Donna Ambrose. San Jose Officer Roberto Payne arrived to find Brown, who provided a description of the men and pointed out the house into which Brackett fled. Brackett then emerged from the house, saw Officer Payne, and fled. He was eventually apprehended and Celaya was arrested by another police officer. Brackett's blood alcohol was measured at .21 percent and he tested positive for methamphetamine. Id. at 2-3.

B.   Case History

At trial, the jury convicted Brackett of assault with a deadly weapon, resisting a police officer and misdemeanor assault. He admitted he had suffered a prior conviction. He was sentenced to eleven years in state prison.

Brackett appealed and petitioned the California Court of Appeal for a writ of habeas corpus. The California Court of Appeal affirmed the conviction and denied the petition in an unpublished opinion. Bracket filed a petition for review and petition for writ of habeas corpus in the California Supreme Court. Both petitions were summarily denied.

Brackett then filed this action. In his petition for writ of habeas corpus, Brackett claims that he was denied his Sixth Amendment right to effective assistance of counsel because (1) his counsel failed to perfect the trial record to support an objection to granting a Fifth Amendment privilege to a witness and (2) his counsel failed to object to a Griffin error made by the prosecution during closing argument. This court issued an order to show cause why the petition should not be granted. The court later denied respondent's motion to dismiss. Respondent then

filed an answer and Brackett filed a traverse.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

To prevail on an ineffective assistance of counsel claim, petitioner must establish two elements. First, he must show that his attorney's performance fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. at 668, 687-8 (1984). In evaluating counsel's performance, the court must presume "that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. Second, petitioner must establish that he was prejudiced by counsel's deficient performance. To find prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, that the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

Brackett claims that his counsel provided ineffective assistance in two ways. First, Brackett argues that his counsel failed to perfect the trial record to reflect that Jason Celaya was not entitled to assert a Fifth Amendment privilege against testifying on Brackett's behalf. Second, Brackett asserts that his counsel erroneously failed to object to the prosecution's references to a lack of exculpatory evidence. Brackett argues that without Celaya's testimony, only he could have refuted the prosecution witnesses' version of the events and therefore the

4

prosecutor was impermissibly drawing attention to Brackett's decision not to testify, committing a <u>Griffin</u> error.

A.     <u>Counsel's Failure To Perfect Record On Fifth Amendment Privilege</u>

At trial, the defense wanted to call Jason Celaya, who was with Brackett at the time of the crime. The defense expected Celaya to testify in much the same manner that he testified at Brackett's parole revocation hearing, where he claimed that the victim, Mr. Brown, acted in an aggressive manner. RT 165. Brackett claims that Celaya's testimony was pivotal to establishing the defense of self-defense, and that if Celaya had been compelled to testify, Brackett would have been acquitted. Traverse, p. 1.

Acting through his attorney, Mr. Campbell, Ceyala invoked his Fifth Amendment privilege against self-incrimination. Campbell identified three bases for believing that Celaya would expose himself to criminal liability if he testified: (1) the testimony might lead to charges of aiding and abetting Brackett's crimes, (2) the testimony would provide evidence for charges involving drugs, and (3) he could be charged with perjury if his statements were inconsistent with his testimony at the parole hearing. RT 155-157. The trial court found that Celaya did have the privilege and excused him from testifying.

Brackett asserts that Celaya did not properly have the privilege against self-incrimination. He asserts that the first two bases offered in support of the privilege were meritless because the state was precluded from filing additional charges against Celaya under California Penal Code section 954's prohibition on multiple prosecutions and that the third basis offered -- fear of perjury charges -- was unfounded. Petition, p. 9. Brackett particularly faults counsel for failing to perfect the record by presenting evidence that Celaya's conviction had become final and therefore Celaya could not be further prosecuted for his activities that night.

Pursuant to state law, which has a self-incrimination privilege similar to the federal one, the trial court conducted a particularized inquiry into what Celaya would be asked and how the

answers might incriminate him.[1]  RT 154-157.  The parties described what questions they intended to ask Celaya and his attorney explained how the questions could expose Celaya to criminal liability.  Although the trial court did not articulate the basis for finding Celaya was entitled to invoke the privilege against self-incrimination, the California Court of Appeal held that the fear of perjury was a correct basis to excuse Celaya from testifying.  Cal. Ct. App. Opinion, p. 8.  The court stated:

> Based on the questions, Mr. Campbell suggested that Celaya's testimony could be inconsistent with his testimony at [defendant's] prior parole hearing, where he testified that Mr. Brown was the aggressor in the fight, and that [defendant] did not swing a tequila bottle or rock at Mr. Brown's head.  It is reasonable to conclude that Mr. Campbell interviewed his client, was privy to what Celaya would say on the stand, and that Mr. Campbell's representation to the court that Celaya may expose himself to a perjury prosecution was based on discussions with his client.  [¶]  We agree. . . . The trial court's determination is not palpably erroneous and will not be disturbed.

Cal. Ct. App. Opinion, p. 8-9.  The appellate court also determined that the record had been developed adequately on the finality of Ceyala's conviction so as to permit judicial review of Brackett's challenge to Ceyala's assertion of the privilege based on the risk of further prosecution.

Because Brackett's claim is based on ineffective assistance of his counsel, he must show that the failure to perfect the trial record concerning Celaya's conviction prejudiced his case.  If any of the bases that Campbell asserted in invoking Celaya's Fifth Amendment privilege were valid, then Celaya was properly excused from testifying and there would be no prejudice in Brackett's attorney failing to perfect the record on another basis.  Consequently, in order to establish that Brackett was denied his Sixth Amendment right to effective counsel he must demonstrate that none of the proferred reasons were valid.

---

[1] Under California Evidence Code section 940, "a person has a privilege to refuse to disclose any matter that may tend to incriminate him."  "Whenever the proffered evidence is claimed to be privileged under section 940, the person claiming the privilege has the burden of showing that the proffered evidence might tend to incriminate him; and the proffered evidence is inadmissible unless it clearly appears to the court that the proffered evidence cannot possibly have a tendency to incriminate the person claiming the privilege."  Cal. Evid. Code § 404.  In People v. Ford, 45 Cal.3d 431, 441(1988), the California Supreme Court interpreted Evidence Code section 404 to incorporate the standard from Hoffman v. United States, infra.  See also People v. Cudjo, 6 Cal.4th 585, 617 (1993).

The Fifth Amendment privilege against self-incrimination is broad. In Hoffman v. United States, 341 U.S. 479 (1951), the Supreme Court held that the privilege against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure." Id. at 486 (citing Counselman v. Hitchcock, 142 U.S. 547 (1892); Arndstein v. McCarthy, 254 U.S. 71 (1920)). To deny a witness the right to invoke the privilege, the judge must be "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate." Id. at 488.

While a risk of perjury as a basis for invoking the privilege against self-incrimination is limited, it is well established under California law that fear of exposing oneself to a charge of perjury based on *prior* sworn testimony is grounds for invoking the privilege. Cudjo, 6 Cal. 4th at 617 ("Moreover, because [the witness] had testified at the preliminary hearing, he could properly invoke the privilege to avoid exposing himself to a charge of perjury in that proceeding"); People v. Maxwell, 94 Cal. App. 3d 562, 570 (1979)("A witness who has testified in a prior proceeding is entitled to invoke this privilege and refuse to answer questions which might expose the witness to a prosecution for perjury by furnishing a link in the chain of evidence tending to establish guilt of that offense.") The California rule parallels federal law, which also recognizes the right to invoke the privilege based on fear of a perjury prosecution arising out of prior sworn statements. See United States v. DeSalvo, 26 F.3d 1216 (2d Cir. 1994) (holding that a witness is entitled to invoke the privilege against self-incrimination if the testimony may reveal perjury in a prior proceeding).

Because the risk of exposing perjury in a prior sworn statement is an appropriate basis for invoking the privilege against self-incrimination, the state court did not err in excusing Celaya from testifying on that basis. At the hearing, Celaya, through his attorney, met the burden of showing that the proffered evidence might tend to incriminate him. The trial court was clearly correct in implicitly finding that it could not say the answers "cannot possibly" have the tendency to incriminate Celaya. Cal. Evid. Code § 404. Therefore Celaya was properly excused from testifying on the basis of potential liability from perjury.

Brackett argues that a perjury risk was not a proper basis to excuse Celaya from testifying. He argues first that Campbell's "assertion presupposed that Celaya would testify falsely, or at least differently, than he had at the parole hearing. Second, every witness who testifies falsely in any case is subject to prosecution for perjury; thus, if this were a valid reason to uphold a witness' Fifth Amendment privilege, no witness could be compelled to testify." Petition, p. 9. His first point is true, but that is exactly why Ceyala had asserted the privilege. His second point overestimates the availability of the privilege: not every witness has made a prior sworn statement as Ceyala had done here.

Because Ceyala's testimony was properly excluded as possibly exposing Celaya to perjury charges, it makes no difference whether Brackett's counsel perfected the record to reflect the factual basis for Brackett's alternative argument that Celaya could not be charged with additional crimes occurring on January 31, 2002. Even if Brackett's attorney had included Celaya's guilty plea records and prevailed in arguing that the state could not charge Celaya with further crimes from the incident on that night, Celaya still could avoid testifying due to the perjury exposure. Brackett's ineffective assistance of counsel claim fails on the prejudice prong.

It is also worth noting that Brackett's attorney vigorously attempted to introduce Celaya's prior testimony. Apparently anticipating the ruling on the self-incrimination privilege, defense counsel argued for admission of Celaya's prior testimony from the parole proceeding under other evidence code provisions. She offered forceful arguments for admitting the testimony under California Evidence Code section 1290 (prior testimony) and under section 1230 (declaration against interest). In fact, Brackett's attorney did successfully have several of Celaya's testimonial statements admitted into evidence under section 1230. RT 158-172.

The petition cannot be granted on the basis of ineffective assistance of counsel in failing to perfect the record with regard to Celaya's guilty plea because there was no prejudice from any error.

B.   <u>Counsel's Failure To Object To Alleged Griffin Error</u>

Brackett's second claim is that his attorney erroneously failed to object to the prosecution's closing argument. He maintains that the prosecutor made several impermissible references to the lack of evidence to support the defense theory of self-defense. Brackett argues that only he could have provided testimony to counter the prosecution's version of events once Ceyala was excused from testifying. In drawing attention to the lack of evidence, the prosecution allegedly was making reference to Brackett's decision not to testify - an error under <u>Griffin v. California</u>, 380 U.S. 609 (1965).

Brackett's claim of a <u>Griffin</u> error is based on these statements by the prosecutor:

1.  The defendant "had [to have] an actual belief that he had a right to self-defense, meaning going though his head I have a right to self-defense. . . . [¶] What evidence of that is there? None." The prosecutor pointed out that neither Mr. or Mrs. Brown or Donna Ambrose had testified to such a belief on the part of the defendant.

2.  "[T]here is absolutely no evidence that at the time the defendant swung a bottle, and at the time the defendant swung a rock, that he had an actual and an objectively reasonable belief that he had a right to self-defense."

3.  "There is no actual or reasonable belief by this defendant, no evidence."

4.  "The myth of self-defense, actual and reasonable belief of imminent bodily injury. No evidence of the defendant's actual belief, what was going through his mind circumstantially, there is no evidence to say what was actually going through his mind when he swings the bottle and when he swung the rock."

5.  "[N]o evidence of his actual belief . . . ."

6.  "[W]hile the defense has no obligation to produce evidence, I was commenting on the fact that there was no evidence [of self-defense]. [¶] . . . . They have the subpoena power, too, . . . [and] they have a right and ability."

RT 250-263; RT 275-286; Cal. Ct. App. Opinion, p. 14.

The California Court of Appeal held that no <u>Griffin</u> error occurred. The court further determined that counsel was not ineffective in failing to object. As the court noted, "When not taken out of context, the remarks that defendant quotes are not improper comments on defendant's failure to testify." Cal. Ct. App. Opinion, p. 15. Instead, the prosecutor was making reference to the state of the defense's evidence - which is entirely permissible. <u>See</u> <u>id.</u> 14-15.

9

1 The Fifth Amendment privilege against self-incrimination, as incorporated by the 2 Fourteenth Amendment, "forbids either comment by the prosecution on the accused's silence 3 or instructions by the court that such silence is evidence of guilt." Griffin, 380 U.S. at 615. The 4 test to determine whether a Griffin violation has occurred is "whether the language used was 5 manifestly intended or was of such a character that the jury would naturally and necessarily take 6 it to be a comment on the failure to testify . . . . There is a distinction between a comment on 7 the defense's failure to present exculpatory evidence as opposed to a comment on the 8 defendant's failure to testify." United States v. Mende, 43 F.3d 1298, 1301 (9th Cir. 1995) 9 (internal quotation marks and citations omitted); see also Lincoln v. Sunn, 807 F.2d 805, 809 10 (9th Cir. 1987). The prosecutor may comment on the defense's failure to present exculpatory 11 evidence as long as the comment is not phrased to call attention to the defendant's failure to 12 testify. Id. If a Griffin error is found, habeas relief is available only if it had a substantial and 13 injurious effect on the jury's verdict. See Beardslee v. Woodford, 358 F.3d 560, 588 (9th Cir.), 14 cert. denied, 543 U.S. 1096 (2004).

15 The state court reasonably determined that there was no Griffin error. The prosecutor 16 expressly called attention to the fact that the test for self-defense is objective and that the defense 17 had not established that a reasonable person would have felt the need to defend himself under 18 the circumstances. The prosecutor made several references to the lack of circumstantial 19 evidence to support a theory of self-defense, made references to the testimony of witnesses, and 20 even conceded that the defense had no obligation to produce such evidence. All the comments 21 cited by Brackett, taken in context, encouraged the jury to weigh the evidence of self-defense 22 and reject it. No comment was "manifestly intended or [] of such a character that the jury would 23 naturally and necessarily take it to be a comment on the failure to testify." Mende, 43 F.3d at 24 1301.

25 Brackett's claim of ineffective assistance of counsel fails on both prongs: there was no 26 prejudice in failing to object to remarks that did not amount to Griffin error and his attorney was 27 not deficient in failing to do so. Cf. Rupe v. Wood, F.3d 1434, 1445 (9th Cir 1996)("Failure to 28 take a futile action can never be deficient performance.") Brackett is not entitled to the writ on

10

his claim that his attorney failed to provide effective assistance under the Sixth Amendment by not objecting to the prosecution's closing argument fails.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 4, 2006

_____
SUSAN ILLSTON
United States District Judge